

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

IN RE: §
ALBERTO ADAME OCHOA, *et al* § CASE NO: 15-70514
    Debtor(s) §
      § CHAPTER 13

**MEMORANDUM OPINION
REGARDING
<u>DEBTORS' MOTION TO IMPOSE THE AUTOMATIC STAY</u>
[*Resolving ECF No* 10 ]**

## I. Introduction

In the instant motion, this Court is asked to determine whether to grant Debtors' Motion To Impose the Automatic Stay pursuant to 11 U.S.C. § 362(c)(4). However, after reviewing the record, this Court notes that only one case was actually pending within the previous year, and it was dismissed. Therefore, the analysis should be under 11 U.S.C. § 362(c)(3) rather than § 362(c)(4).

## II. Findings Of Fact

To the extent that any Finding of Fact constitutes a Conclusion of Law, it is adopted as such. To the extent that any Conclusion of Law constitutes a Finding of Fact, it is adopted as such.

**A. Debtors' First Bankruptcy Case**

1.    On May 22, 2014, Alberto Ochoa ("*Ochoa*") and Olivia Berumen (singly "*Berumen*," collectively "*Debtors*") filed their initial petition under chapter 13 of Title 11 of the United States Code (the "*Bankruptcy Code*" or "*Code*"),[1] initiating case number 14-70244-M-13 and thereby invoking the automatic stay under 11 U.S.C. §362. [Case No. 14-70244, ECF No.

---

[1] Any reference to "*Code*" or "*Bankruptcy Code*" is a reference to the United States Bankruptcy Code, 11 U.S.C., or any section (i.e. §) thereof refers to the corresponding section in 11 U.S.C.

1].

2. Ochoa stated that he was a Civil Engineer by profession, earning approximately $4,354.58 per month. Berumen was listed as a homemaker. [ECF No. 16].

3. On May 19, 2014, Debtors filed their chapter 13 plan. [ECF No. 18]. The plan called for monthly payments in the amount of $3,050.00 to the chapter 13 trustee, with a 39% dividend to the general unsecured class of creditors. [ECF No. 18 at 8-9].

4. On August 14, 2014, the chapter 13 trustee filed her Motion To Dismiss, alleging that the Debtors were more than $9,000 in arrears with her office. [ECF No. 33].

5. On September 18, 2014, the Court dismissed the case. [ECF No. 37].

6. There were no motions to lift the automatic stay in this case.

**B. Debtors' Second Bankruptcy Case**

7. On December 2, 2014, Debtors filed a second petition for chapter 13 bankruptcy, initiating case number 14-70659-M-13 and thereby invoking the automatic stay. [Case No. 14-70659, ECF No. 1]. Debtors filed their chapter 13 plan on the same date. [ECF No. 2]. The chapter 13 plan called for payments in the amount of $3,350.00, with a 98% dividend to the general unsecured class of creditors.

8. Ochoa stated that he was a Civil Engineer by profession, earning approximately $4,500.00 per month. Berumen was listed as a homemaker. [ECF No. 1]

9. On December 3, 2014, Debtors filed their Motion to Extend the Automatic Stay. [ECF No. 6].

10. On December 18, 2014, the Court entered its Order Extending the Automatic Stay as to all creditors. [ECF No. 35].

11. On March 5, 2015, the trustee filed her Motion to Dismiss, alleging, inter alia,

that the Debtors were more than $10,000.00 in arrears with her office. [ECF No. 47].

12. On March 30, 2015, the case was dismissed by the Court. [ECF No. 49].

13. There were no motions to lift the automatic stay filed in this case.

**C. The Debtors' Third Bankruptcy Case (the instant chapter 13 proceeding)**

14. On October 5, 2015, Debtors filed the instant chapter 13 proceeding. [Case No. 15-70514, ECF No. 1]. Debtors filed their plan of reorganization on the same date (hereinafter the "***Plan***"). [ECF No. 2]. The Plan calls for monthly payments in the amount of $3,500.00 to the chapter 13 trustee, with a 13% dividend to the general unsecured class of creditors.

15. Ochoa again states that he is a Civil Engineer by profession, earning approximately $5,500.00 per month. Berumen is listed as a homemaker. [ECF No. 1].

16. On October 13, 2015, Debtors filed an Emergency Motion To Impose The Automatic Stay, (hereinafter the "Motion"). [ECF No. 10]. However, since there was only one joint case filed by the debtors that was pending within the 1-year period but was dismissed preceding the instant case, this Court converted the hearing into a hearing on a Motion To Extend The Automatic Stay. *Compare* Finding of Fact No. 5 *with* Finding of Fact No. 14.

17. No objections to this Motion have been filed by any party in interest.

**D. The Hearing on October 28, 2015**

18. On October 28, 2015, this Court conducted an evidentiary hearing (the "***Hearing***") on the instant motion. At the hearing, Ochoa was not present, but Berumen, through the assistance of a Spanish-to-English interpreter, was present and testified as to the following:

   a. Berumen testified that Debtors' primary purpose of seeking an extension of the automatic stay was to save their homestead from foreclosure.

   b. Berumen testified that Ochoa, her spouse, was currently working in Mexico as a

    Civil Engineer on a construction project for Piedra y Onyx De La Frontera S.A. de C.V. Ochoa's living expenses are being paid for by the employer on an "as needed" basis, such that the net income from employment is fully available for use by Debtors. However, when pressed by the Court, Berumen admitted that Ochoa received an undisclosed amount *per diem* from his employer, but such *per diem* was not part of Schedules I or J.

c. Berumen also testified that the current mortgage payment does provide for escrow of real estate taxes and homeowner's insurance. The mortgage payment, however, had been incorrectly set in the plan as a "pro-rata" rather than "conduit" payment.

d. Berumen provided testimony confirming some aspects of the budget, including that the Debtors pay income taxes in the United States and that certain expenses, such as Food and Housekeeping Supplies, were accurate.

e. When questioned by the Court, Berumen admitted and testified extensively regarding a property that Debtors own in Mexico, which is neither listed on Schedules A or C nor in the chapter 13 plan. Berumen further testified that the property, which they valued at $700,000 USM, or $49,000 USD, had been sold, and that they were in the process of closing on the deal. Berumen further testified that Debtors planned to take the sales proceeds and pay down their home mortgage. This Court pointed out to Debtors' counsel that the property in Mexico was not listed in Schedules A or C or in the chapter 13 plan. Furthermore, this Court noted that Debtors had not obtained this Court's permission to sell the asset, much less use the proceeds to pay down their home mortgage.

19. This Court discovered other deficiencies as well. For example:

   a. The B22C Form and the testimonial disclosure of a non-exempt property in Mexico indicated that Debtors should have filed a plan that provided for a 100% dividend to the general unsecured class of creditors. Instead, the Debtors are proposing a 13% dividend.

   b. Debtors' plan failed to provide for a $16,000 claim owed to the Internal Revenue Service.

   c. The chapter 13 plan called for the home mortgage to be paid through the trustee's office as a conduit mortgage, but Schedule A did not reflect any liens on the property, contradicting both the chapter 13 plan and Berumen's own testimony.

   d. There is no provision on Schedule J for the payment of post-petition 1040 taxes.

   e. Debtors' Counsel offered a remarkably candid explanation, on the record, that some of the inaccuracies and deficiencies were due to the schedules being copied from the prior case.

20. At the conclusion of the Hearing, this Court took the matter under advisement in order to further examine, pursuant to the requirements of § 362(c)(3), the provisions of the Plan and the Schedules filed by Debtors.

### III. Legal Standard

Section 362 provides that a stay, which is applicable to all entities, is automatically applied whenever a debtor files a petition for bankruptcy, whether voluntary or involuntary. 11 U.S.C. § 362(a) (the "*Automatic Stay*"). The stay prohibits a variety of actions against the debtor or the debtor's property. § 362(a)(1)-(8). However, the stay is subject to certain restrictions when the debtor(s) have had one or more cases pending within the previous year

from the filing of the current petition. *Id*. at (c)(3)(A) & (4)(A). When a debtor has two or more cases pending within a year of filing the current petition, the Automatic Stay is not in effect. *Id.* at (c)(4)(A)(i). However, § 362(c)(3)(A), which is applicable in the instant case, provides a different limitation on the Automatic Stay. Section 362(c)(3)&(3)(A), when read in conjunction, states that:

> if a single or joint case of the debtor was pending within the preceding 1-year period but was dismissed, other than a case refiled under a chapter other than chapter 7 after dismissal under section 707(b) the stay under subsection (a) with respect to any action taken with respect to a debt or property securing such debt or with respect to any lease shall terminate with respect to the debtor on the 30th day after the filing of the later case;

§ 362(c)(3)&(3)(A). However, within the first 30 days of filing a case, a debtor may request that a court continue the Automatic Stay beyond the 30 automatic stay grace period, but the court may only grant such relief and impose the Automatic Stay on

> any or all creditors (subject to such conditions or limitations as the court may impose), after notice and a hearing completed before the expiration of the 30-day period only if the party in interest demonstrates that the filing of the later case is in good faith as to the creditors to be stayed.

§ 362(c)(3)(B); ); *see also In re Little Creek Development Co.*, 779 F.2d 1068, 1072-73 (5th Cir. 1986) (discussing the standard for good faith in the bankruptcy code and stating that "[d]etermining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the debtor's financial condition, motives, and the local financial realities"). A court, when considering a debtor's request for the continuation of the Automatic Stay, is required to evaluate the debtor's evidence rebutting the presumption that the petition has not been filed in good faith under a "clear and convincing" evidentiary standard. § 362(c)(3)(C). The presumption that the petition has not been filed in good faith is created, as to all creditors, when the debtor has been shown to have met any of the following:

>> (I) more than 1 previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was pending within the preceding 1-year period;
>
> (II) a previous case under any of chapters 7, 11, and 13 in which the individual was a debtor was dismissed within such 1-year period, after the debtor failed to—
>
>> (aa) file or amend the petition or other documents as required by this title or the court without substantial excuse (but mere inadvertence or negligence shall not be a substantial excuse unless the dismissal was caused by the negligence of the debtor's attorney);
>>
>> (bb) provide adequate protection as ordered by the court; or
>>
>> (cc) perform the terms of a plan confirmed by the court; or
>
> (III) there has not been a substantial change in the financial or personal affairs of the debtor since the dismissal of the next most previous case under chapter 7, 11, or 13 or any other reason to conclude that the later case will be concluded—
>
>> (aa) if a case under chapter 7, with a discharge; or
>>
>> (bb) if a case under chapter 11 or 13, with a confirmed plan that will be fully performed;

§ 362(c)(3)(C)(i)(I)-(III). For creditors that have sought relief from the Automatic Stay in a previous case for the same debtor, the same presumption is maintained when, "as of the date of dismissal of such case, such action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to such action of such creditor." § 362(c)(3)(C)(ii).[2]

There are several cases in the Southern District of Texas that are instructive in analyzing the clear and convincing standard announced by the Fifth Circuit in *Shafer v. Army & Air Force Exch. Serv.*, which requires that the:

> weight of proof which produces in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established, evidence so clear, direct and weighty and convincing as to enable the fact finder to come to a clear conviction, without hesitancy, of the truth of the precise facts of the case.

---

[2] § 362(c)(3)(C)(ii) states that "as to any creditor that commenced an action under subsection (d) in a previous case in which the individual was a debtor if, as of the date of dismissal of such case, that action was still pending or had been resolved by terminating, conditioning, or limiting the stay as to actions of such creditor."

376 F.3d 386, 396 (5th Cir. 2004) (citing to *In re Medrano*, 956 F.2d 101, 102 (5th Cir. 1992)) (internal quotations omitted).  In *In re Charles*, the court set forth a list of factors to be used in determining whether a debtor can, or alternatively has, established that the pending case has been filed in good faith by clear and convincing evidence.  *In re Charles*, 334 B.R. 207, 219-23 (Bankr. S.D. Tex. 2005).  These so-called *Charles* factors have been adopted in other sister courts in the Southern District of Texas as recently as July of 2015, when a sister court used the factors in *In re Wright*.  533 B.R. 222, 233-34 (Bankr. S.D. Tex. 2015).  The factors to be considered are:

> 1) Does the creditor against whom the extension of the stay is sought agree to the stay extension?
>
> 2) Is it likely that the debtor will obtain a discharge in the pending case?
>
> 3) What is the nature of the debt held by the creditor?
>
> 4) What is the nature of the collateral held by the creditor?
>
> 5) Has the debtor made any purchases on the eve of bankruptcy?
>
> 6) What has been the debtor's conduct in the pending case?
>
> 7) What are the reasons why the debtor wants to extend the automatic stay?; and
>
> 8) Are there any unique facts or circumstances particular to the pending case?

*Id.* at 234.  The foregoing factors, which were intended to assess good faith in a § 362(c)(3) stay *continuation* motion can be extended to assess good faith in a § 362(c)(4) stay *imposition* motion. This Court extended the logic between (c)(3) and (c)(4) in *In re Acosta*, 2015 Bankr. LEXIS 3754 (Bankr. S.D. Tex. Oct. 30, 2015), in order to assess good faith filing for both §§ 362 (c)(3)&(4).  *See In re Charles*, 334 B.R. at 219-23; *see also In re Wright*, 533 B.R. at 233-34.  As the instant case falls squarely within § 362(c)(3), this Court will again adopt these factors

as a method for determining the presence of good faith in the filing of a pending case when the debtor moves for the extension of the Automatic Stay.

### IV.  Conclusions Of Law

**A.  Jurisdiction & Venue**

This Court holds jurisdiction pursuant to 28 U.S.C. § 1334, which provides that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." This is a core matter for the purpose of 11 U.S.C. § 157, which provides that bankruptcy judges may issue final orders or judgments where the matter is determined to be core. Section 157 enumerates a non-exclusive list of core matters, which includes "matters concerning the administration of the estate."  11 U.S.C. § 157.  The decision to grant or deny the imposition of the automatic stay therein is squarely one that involves the administration of an estate. Therefore, jurisdiction is proper by the statutory provisions governing bankruptcy courts.

This Court may only hear a case in which venue is proper. Venue with respect to cases under title 11 is governed by 28 U.S.C. § 1408, which designates that venue may hold "in … the domicile, residence, principal place of business in the United States, or [place of] principal assets in the United States … of the person or entity …" In their petition, Debtors alleges that they resides in Mission, Texas. Therefore, venue is proper.

**B.  Constitutional Authority To Enter A Final Order**

This Court also has an independent duty to evaluate whether it has the constitutional authority to sign a final order.  *Stern v. Marshall*, 131 S. Ct. 2594 (2011).  In *Stern v. Marshall*, the Supreme Court considered the constitutional limitations that Article III imposes upon § 157's grant of final order and judgment powers to non-Article III courts.  *Id.*  The Supreme Court held that § 157 violated Article III to the extent that it authorized final judgments on certain matters.

*Id.* at 2616. The Court found that the particular bankruptcy ruling in dispute did not stem from bankruptcy itself, nor would it necessarily be resolved in the claims allowance process, and it only rested in a state law counterclaim by the estate. *Id.* at 2618. The Court reasoned that bankruptcy judges are not protected by the lifetime tenure attribute of Article III judges, but they were performing Article III judgments by judging on "all matters of fact and law" with finality. *Id.* at 2618-19. Hence, the Court held that Article III imposes some restrictions against a bankruptcy judge's power to rule with finality. The Court found that a solely state law based counterclaim, while statutorily within the bankruptcy judge's purview, escaped a bankruptcy court's constitutional power. *Id.* at 2620. This Court reads *Stern* to authorize final judgments only where the issue is rooted in a right created by federal bankruptcy or the resolution of which relies on the claims allowance process. In other words, this Court may issue final judgments and orders where the issue "arises in" or "arises under" bankruptcy, but not where the issue is merely "related to" bankruptcy. *See* 28 U.S.C. § 157. However, even where the case does create a "Stern problem," Article III will be satisfied where the parties to the case knowingly and voluntarily consent to the bankruptcy court's power to issue final judgments. *Wellness Int'l Network v. Sharif*, 135 S. Ct. 1932, 1938-39 (2015).

The matter at bar requires this Court decide whether the automatic stay pursuant to 11 U.S.C. §362 (c)(4) should be extended, [ECF No. 10], which solely concerns federal bankruptcy law. Therefore, this Court holds constitutional authority to enter a final order and judgment with respect to the matter at bar.

**C. A Review of the 8 Factors to Determine Whether to Deny or Grant the Debtors' Motion**

In *Charles*, the court reasoned that the first two factors amounted to a threshold test for the debtor's good faith in filing the subsequent bankruptcy petition. *In re Charles*, 334 B.R. at

220-21; *see also In re Wright*, 533 B.R. at 234.  If this Court cannot find that either of the threshold factors are met, by either creditor agreement or by likelihood of discharge, then there is no need for this Court to examine the latter factors.  *In re Collins*, 334 B.R. 646, 653 (Bankr. S.D. Tex. 2005).

The first factor looks at creditor responses to the debtor's motion to extend the Automatic Stay.  *In re Charles*, 334 B.R. at 219-23; *In re Wright*, 533 B.R. at 233-34.  Here, the Motion filed by the Debtors seeks to ultimately extend the Automatic Stay, but enumerates a list of specific creditors for the stay to be imposed upon. [ECF No. 10 at 1].  As of the Hearing, no creditors have lodged an objection to extension of the Automatic Stay.  This Court can only infer that the creditors have no objection to the stay being imposed upon them, due to their failure to file an objection prior to the deadline. [ECF No. 10 & 11].  The creditors are deemed to have agreed to the motion, and so no further analysis past the second factor need be done. § 362(c)(4)(B); *In re Collins*, 335 B.R. at 653 ("A finding that the creditor against whom the extension of the stay is sought agrees to a stay extension ends the inquiry"); *Cf. In re Charles*, 334 B.R. at 220.  Therefore, as this Court has deemed agreement by the creditors and that no objections have been filed, the analysis weighs towards a finding that the plan has been filed in good faith.

The second factor is an objective test in the sense that it objectively analyzes the debtor's situation to determine whether the pending bankruptcy case is likely to succeed or to fail.  *In re Charles*, 334 B.R. at 219-23; *In re Wright*, 533 B.R. at 233-34.  In order to receive a discharge in a chapter 13 case, the debtor must confirm a plan and fully perform under that plan.  11 U.S.C. § 1328.  Here, Debtors have filed a Plan that provides a 13% dividend to creditors, as proposed. [ECF No. 2]; Finding of Fact No. 14.  However, Berumen's testimony at the Hearing indicates

that there are omissions in the Plan and Schedules. Finding of Fact No. 18 & 19. Berumen's testimony that Debtors own a home in Mexico and that such home is apparently pending sale, despite lack of approval from this Court, materially changes the provisions of the Plan. Finding of Fact No. 18(e); *see also* Fed. R. Bankr. P. 9011(b) (discussing that representations made to the court are to be done only *after* "an inquiry reasonable under the circumstances"). The proceeds from the sale of the Mexican property would provide a significant influx of assets to the bankruptcy estate, and as such, the Plan should provide a 100% dividend to the general unsecured class of creditors. Finding of Fact No. 18(e) & 19(a). Additionally, the omission of pre-petition IRS debt in the amount of approximately $16,000 from the Plan casts a substantially different light on the positive aspects of the sale of the Mexican property, because any such proceeds should be paid, pro-rata, among all of the allowed claims and not just the Debtors' home mortgage. Finding of Fact No. 18(e), 19(a)-(b). Furthermore, the Plan and schedules do not provide for post-petition income tax payments. Finding of Fact No. 19(d). On a preliminary inquiry, this Court cannot conclude that the Plan meets the requirements under 11 U.S.C. § 1325(a)(5) and would thus be likely confirmable, due to multiple inaccuracies with the Plan and Debtors' Schedules. *In re Charles*, 334 B.R. at 220-21. Due to the significant omissions from the Plan and Schedules, this Court cannot conclude that the Debtors are likely to receive a discharge, because this Court cannot conclude that the Plan, as proposed, is confirmable. *See* 11 U.S.C. § 1328(a). As this Court cannot conclude that the Debtors are likely to receive a discharge, there can be no finding other than that the pending case was filed not in good faith.

### 2. Subjective Analysis – Factors Specific to the Pending Bankruptcy for PFC

The subjective analysis takes into account the remaining six *Charles* factors. *In re Charles*, 334 B.R. at 221-23. This Court must analyze these factors to determine if there is good

faith in the filing of the pending case "as to the creditors to be stayed." *Id.* However, this Court does not need to proceed to the remaining six *Charles* factors when the two threshold factors do not weigh towards a finding that the Debtors filed the pending case in good faith. *Id.* As this Court has concluded that the Debtors failed to pass the burden imposed by the threshold factors, there is no need to proceed with an analysis under the subjective factors.

### 3. Conclusion

Based on the foregoing analysis, this Court cannot conclude that Debtors have filed the pending case in good faith based on the threshold *Charles* factors. As such, pursuant to § 362(c)(3)(B), Debtors have failed to carry the burden of demonstrating, by clear and convincing evidence, that they have filed the pending case in good faith as to all creditors.

### V. Conclusion

Debtors filed their Motion to Impose the Automatic Stay, which requires that this Court analyze the instant motion, the conduct of the Debtors in the instant case and prior cases, and a preliminary consideration of the Debtors' other filings in the instant case. § 362(c)(4)(B). However, Debtors had only a single case pending in the year prior to filing, and § 362(c)(4) was therefore not applicable, and this Court converted the filed motion to a Motion to Extend the Automatic Stay under § 362(c)(3). This Court used the factors from *In re Charles*, *In re Collins*, and *In re Wright* to help determine whether Debtors filed the pending case in good faith by "clear and convincing evidence,"[3] as previously adopted by this Court. *See In re Charles*, 334 B.R. at 219-223; *see also In re Wright*, 533 B.R. at 234; *see also In re Collins*, 334 B.R. at 652. The first two threshold factors weighed against a finding that Debtors filed the instant case in good faith, due to the staggeringly significant omissions and discrepancies between the

---

[3] Clear and convincing evidence was defined by the Fifth Circuit in *Shafer*, 376 F.3d at 396.

Schedules and Plan with the reality of the Debtors' financial situation.  *Supra* Part IV.C.1.  The analysis under the six subjective *Charles* factors and the additional *Acosta* factors were unnecessary to the disposition of the instant motion, as Debtors failed to demonstrate that they filed the pending case in good faith under the first two threshold factors.  *Supra* Part IV.C.2; *see also In re Charles*, 334 B.R. at 221-23; *In re Acosta*, 2015 Bankr. LEXIS 3754 at *28.  Accordingly, Debtors' Motion to Extend the Automatic Stay is **DENIED**.

An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously herewith for the Debtors' Motion.

SIGNED 11/04/2015.

_____
Eduardo V. Rodriguez
United States Bankruptcy Judge